**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

UNITED STATES OF AMERICA

Case No. 1:12-cr-968 (JFK)

      vs.

LEONARD WOLF,

          Defendant.

_____/


**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
ALL RECORDED TELEPHONE CONVERSATIONS DISCLOSED BY THE
GOVERNMENT AND/OR COMPEL AN EVIDENTIARY HEARING COMPELLING THE
GOVERNMENT TO PROVIDE SUBSTANTIATION AS TO ALL RECORDED
TELEPHONE CONVERSATIONS</u>**


Of Counsel & On the Brief:
Michael B. Buckley

On the Brief:
Alan R. Levy

## TABLE OF CONTENTS

Table of Authorities…………………………………………………………………….   ii

Introduction & Statement of Facts…………………………………………..………...   1

ARGUMENT………………………………………………………………….…........   4

**POINT I**

THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN
THAT THE RECORDED CONVERSATIONS ALLEGEDLY
INVOLVING DEFENDANT ARE COMPLIANT WITH
18 U.S.C. § 2511, AND ARE PROPERLY SUPPRESSED.............................   4

**POINT II**

IN THE EVENT THAT THE RECORDINGS ARE NOT SUPPRESSED,
AN EVIDENTIARY HEARING SHOULD BE HELD TO DETERMINE THE
VOLUNTARINESS OF THE CONSENSUAL RECORDING AS WELL AS
THE "AUTHENTICITY AND ACCURACY" OF THE RECORDINGS................   9

CONCLUSION…………………………………………………………………........   11

# TABLE OF AUTHORITIES

## *Cases*

Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977)...................... 7

State v. Smith, 641 So. 2d 849 (Fla. 1994) .................................... 6

State v. Walls, 356 So.2d 294 (Fla. 1978)........................................... 6, 7

U.S. v. Arango-Correa, 851 F.2d 54 (2nd Cir. 1988) .......................... 10

U.S. v. Bonanno, 487 F.2d 654 (2nd Cir. 1973) .................................. 9

U.S. v. DePalma, 461 F. Supp. 800 (S.D.N.Y. 1978)........................ 8

U.S. v. Fuentes, 563 F.2d 527 (2nd Cir. 1977) .................................. 9, 10

U.S. v. Lanza, 349 F.Supp. 929 (M.D.Fla. 1972)............................... 7

U.S. v. Lee, 1999 WL 1037818 (S.D.N.Y. 1999) ................................ 6, 9

U.S. v. Rohlsen, 968 F.Supp. 1049 (D.V.I. 1997) ............................. 6

U.S. v. Ruggiero, 928 F.2d 1289 (2nd Cir. 1991) ............................. 10

U.S. v. Yannotti, 541 F.3d 112 (2nd Cir. 2008).................................... 7

## *Statutes*

Fla. Stat. § 934................................................................... 7, 8

18 U.S.C. § 1343.................................................................. 1

18 U.S.C. § 2511.................................................................. *passim.*

18 U.S.C. § 2515.................................................................. 4

18 U.S.C. § 2518.................................................................. 5, 7

## INTRODUCTION & STATEMENT OF FACTS

The indictment in this action accuses defendant of one count of a violation of 18 U.S.C. § 1343 and specifically states:

> From at least in or about December 2008 through in or about February 2012, in the Southern District of New York and elsewhere, LEONARD WOLF, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representation, and promises, did transmit by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, WOLF defrauded an individual into paying him $10 million by falsely claiming that the money would be used for an investment.

The Government in this case has made three (3) disclosures of evidence, in which they have provided sixty-five (65) separate digital recordings of conversations which they allege involve the defendant.  The three disclosures are described as follows:

- On January 4, 2013, the Government called such disclosures, "consensual recordings of conversations involving the defendant." (See Exhibit "A")

- On January 11, 2013, the Government called such disclosures, "Recorded voicemails and/or conversations involving the defendant." (See Exhibit "B")

- On March 1, 2013, the Government called such disclosures, "recordings of conversations involving the defendant." (See Exhibit "C")

The January 4th disclosure consists of seven (7) recordings ranging from 0:29 – 16:50 in length and were allegedly recorded on different days from

February 7, 2012 to March 28, 2012. Moreover, the January 4th recordings appear to be those referred to in the Sealed Complaint, in which an FBI Special Agent states he "directed Victim-1 to have a series of telephone conversations with LEONARD WOLF, the defendant, which I consensually monitored and recorded." (See Complaint ¶ 5 – Docket #1)   Although it is believed that the seven (7) recordings provided by the Government on January 4th are those which are described in the Complaint, the Government has never explicitly stated so. In fact, the Government's complaint only lists three (3) of the government's produced calls, specifically February 7, 2012, February 13, 2012, and February 15, 2012. The complaint fails to mention the two recorded calls dated February 23, 2012 and a call recorded on March 28, 2012. Additionally, the Government has never confirmed the information as to when these recordings were made, who made them or how they were made.

Meanwhile, the Government has provided even less information regarding the recorded conversations disclosed on January 11th and March 1st. The January 11th disclosure consists of four (4) recordings ranging from 0:25 – 43:25 in length. The Government has provided no information as to when these recordings were made, who made them or how they were made. The March 1st disclosure consists of fifty-four (54) recordings ranging from 1:04 – 41:59 in length. The Government has provided no information as to when these recordings were made, who made them or how they were made.

The total length of all sixty-five (65) recordings exceeds over 15 hours, and the Government has failed to identify which of these recordings, or portions

thereof they intend to use at time of trial.  Because these recordings fail to comply with 18 U.S.C. § 2511, they are properly suppressed by this court.  In the alternative, if the recordings are not suppressed by the court, the court should order an evidentiary hearing compelling the Government to provide substantiation as to all recorded telephone conversations.

## ARGUMENT

**POINT I**

**THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN THAT THE RECORDED CONVERSATIONS ALLEGEDLY INVOLVING DEFENDANT ARE COMPLIANT WITH 18 U.S.C. § 2511, AND ARE PROPERLY SUPPRESSED**

18 U.S.C. § 2511(1)(a) makes it an offense against federal law to make a tape recording of a conversation except as allowed by other provisions of that chapter. The two subject exceptions are as follows

18 U.S.C. § 2511(2)(c) states:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(d) states:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2515 provides that the contents of a communication intercepted in violation of 18 U.S.C. § 2511 may not be received in evidence before any tribunal.  Specifically, Section 2515 provides:

> Whenever any wire or an oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision

thereof if the disclosure of that information would be in violation of this chapter.

In that regard, 18 U.S.C. § 2518(10)(a) provides that a defendant may file a motion to suppress the contents of any unlawfully intercepted oral communication.

In this case, the Government has provided nearly no information as to how the sixty-five (65) subject recorded conversations were made. Specifically, regarding four (4) recordings disclosed on January 11th, and the fifty-four (54) recordings disclosed on March 1st, the Government has not provided any information as to who made the recordings, when they were made or how they were made. This reason alone supports the suppression of these recordings.

To be fair, the Government has provided some (albeit very incomplete) information regarding the seven (7) recordings disclosed on January 4th. In that regard, the Complaint authored by an FBI Special Agent states "In or about February 2012, I directed Victim-1 to have a series of telephone conversations with LEONARD WOLF, the defendant, which I consensually monitored and recorded." (See Complaint ¶ 5 – Docket #1) Hence, it is clear that the Government intends to rely upon the consensual recording exceptions as outlined by § 2511(2)(c) and § 2511(2)(d).

Nevertheless, whether the Government chooses to use the exceptions of either § 2511(2)(c) or § 2511(2)(d), both statutes make it clear that in order for the recording to be proper, "one of the parties to the communication" must consent to the recording. It is crucial to note that the FBI Agent, by his own words, admits that he was NOT "one of the parties to the communication."

5

Therefore, whether or not the FBI agent consented to the recording is irrelevant. On the other hand, in order for the recording to be valid in accordance with either § 2511(2)(c) or § 2511(2)(d), "Victim-1" should have been the one to have consented to the recording.  In that regard, the Government has provided no evidence whatsoever, that Victim-1 or any parties to the communication consented to the recordings.  In fact, the FBI agent's statement in the complaint indicates that he "**directed**" Victim-1 to have a series of conversations with the defendant.  This hardly shows that Victim-1 consented to the recording of the conversation, but rather infers that Victim-1 was compelled to have the conversations recorded against his will.

If there is no evidence that any of the parties to the communication consented to the recording than the tapes are properly suppressed.  See U.S. v. Rohlsen, 968 F.Supp. 1049 (D.V.I. 1997).  Clearly, since the defendant is the other party to the conversation, the burden is on the Government to prove that Victim-1 consented to recording, which they have failed to do here.  See U.S. v. Lee, 1999 WL 1037818 (S.D.N.Y. 1999).

The sheer lack of information the government has provided regarded these recorded conversations not only calls into question the authenticity of the recordings, but the violation of Defendant's constitutional and statutory rights.  As a Florida resident, defendant has a right to be protected by Fla. Stat. § 943 which makes it a crime to intercept or record a "wire, oral, or electronic communication" in Florida, unless all parties to the communication consent.  See State v. Smith, 641 So. 2d 849 (Fla. 1994); State v. Walls, 356 So.2d 294, 296 (Fla. 1978) ("that

the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping.") Likewise, the prohibition against interception of defined wire or oral communications unless all parties thereto give prior consent represents a policy decision by Florida Legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to conversation. See Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977), appeal dismissed 435 U.S. 920, rehearing denied 435 U.S. 1018 (1978).  Furthermore, for those calls recorded while Defendant was in his home, he had heightened expectation of privacy, triggering the protection afforded under Fla. Stat. § 934. See State v. Mozo, 655 So.2d 1115 (Fla. 1995).

Furthermore, the majority of the calls that the Government has disclosed consist of conversations regarding health, sports and recreation/lifestyle topics. These matters are personal, not criminal, and are wholly irrelevant to the subject suit.  These types of calls have been the source of restriction under Federal law and are totally improper in this matter and properly suppressed. See 18 U.S.C. § 2518(5); see also U.S. v. Yannotti, 541 F.3d 112, 124 (2nd Cir. 2008); U.S. v. Lanza, 349 F.Supp. 929 (M.D.Fla. 1972).

Additionally, two (2) of the recordings provided in the January 4th disclosure raise serious concerns as to their integrity, specifically a February 7, 2012 recording lasting 5:08 and a February 23, 2012 recording lasting 6:09.  At the end of the 5:08 recording, there is a "glitch" lasting approximately five (5) seconds, where another call is superimposed over the subject call.  On the 6:09

recording, the recording starts in the middle leaving no indication as to what was said prior.  Not having heard this call in its entirety, it is too risky that it will be taken out of context, thus rendering the whole call unreliable.  These glitches can indicate tampering with the recording or at the very least, they present evidence that the government must overcome showing that the recording procedures are too unreliable to require preclusion.  U.S. v. DePalma, 461 F. Supp. 800, 827 (S.D.N.Y. 1978).

> Government should take sufficient steps to preserve accuracy of wiretap recordings at time they are made and to deter alterations of such recordings pending judicial order sealing tapes; in most circumstances, such procedure should include restricted access to monitoring area, records indicating who held custody of tapes at all times, and storage of tapes under lock and key pending judicial order sealing them.

Id. at 827.  At the very least, the Government should be required to prove that proper record and log keeping along with the proper use of recording equipment was made to ensure that the recordings were not edited or altered.

In this case, it is clear that said measures were not followed as the chain of custody only addressed a limited number of the calls and even those calls were inadequately identified.  This represents insufficient logkeeping and record keeping.  Also, it appears that the equipment failed on at least two (2) occasions and the government failed its duty to record only relevant communications to the criminal indictment.  Due to these unreasonable recording measures, the calls should be suppressed.

## POINT II

## IN THE EVENT THAT THE RECORDINGS ARE NOT SUPPRESSED, AN EVIDENTIARY HEARING SHOULD BE HELD TO DETERMINE THE VOLUNTARINESS OF THE CONSENSUAL RECORDING AS WELL AS THE "AUTHENTICITY AND ACCURACY" OF THE RECORDINGS

In this case, the Government has disclosed sixty-five recordings, totaling in excess of 15 hours.  As stated earlier, the Government has failed to identify which of these recordings, or portions thereof they intend to use at time of trial. Moreover, of the vast majority of these recordings, the Government has provided no information as to when these recordings were made, who made them or how they were made.

In U.S. v. Lee, 1999 WL 1037818 (S.D.N.Y. 1999), Judge McKenna held that a defendant was entitled to an evidentiary hearing as to the voluntariness of the person who allegedly made and/or recorded the conversations. See also U.S. v. Bonanno, 487 F.2d 654, 656 (2nd Cir. 1973); U.S. v. Fuentes, 563 F.2d 527, 533 (2nd Cir. 1977).  In ordering the evidentiary hearing, Judge McKenna inferred that it is ultimately the Government's burden to show that the recordings were voluntary in compliance with § 2511(2)(c) or § 2511(2)(d).

> a defendant challenging the voluntariness of another person's making and recording of telephone conversations with himself can hardly be expected to submit an affidavit based on personal knowledge of the facts underlying his challenge.

Id. at *1

In addition, there is also the question of the reliability of the recordings the Government wishes to use.  It is well settled law that when the Government wishes to use recorded conversations as evidence against a defendant, it must

"produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." <u>U.S. v. Ruggiero</u>, 928 F.2d 1289, 1303 (2nd Cir. 1991) (<u>quoting</u> <u>Fuentes</u>, 563 F.2d at 532 (internal citations omitted); <u>see</u> <u>also</u> <u>U.S. v. Arango-Correa</u>, 851 F.2d 54, 58 (2nd Cir. 1988).  As stated earlier, the Government has provided no information as to when these recordings were made, who made them or how they were made.   Additionally, it appears that several of the recordings showed equipment failures and/or "glitches", which can be presented to the court in an evidentiary hearing.

Hence, the court should order an evidentiary hearing so that the Government can provide substantiation to the subject recordings.

**CONCLUSION**

For the reasons stated herein, the recorded statements are properly suppressed or in the alternative, the an evidentiary hearing should be scheduled compelling the Government to provide substantiation as to all recorded telephone conversations.

Dated:      April 22, 2013

BUCKLEY LAW GROUP, P.A.


By:/s/Michael B. Buckley/s/
Michael B. Buckley (MB-7357)
Alan R. Levy (AL-0722)
Attorneys for Defendant
225 Broadway, Suite 2600
New York, NY 10004
(212) 514-7400
f-(212) 514-7404