UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA              :

    -v.-                              :

                                               12 Cr. 968 (KMW)

LEONARD WOLF,                         :

                Defendant.         :

-------------------------------------------------------------x


## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S <u>MOTION TO WITHDRAW HIS GUILTY PLEA</u>


PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America


Niketh Velamoor
Jonathan Cohen
Assistant United States Attorneys
- Of Counsel -

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 1

   A.  Procedural History ........................................................................................................ 1

   B.  *Curcio* and *Lafler*/*Frye* Allocutions.............................................................................. 5

   C.  The Trial and the Government's Evidence .................................................................. 7

   D.  Guilty Plea .................................................................................................................... 9

   E.  The Instant Motion and the Defendant's Declaration.............................................. 12

ARGUMENT........................................................................................................................ 13

   I.   The Defendant Has Not Met His Burden of Showing Any Valid Basis For Withdrawal of His Guilty Plea ....................................................................................................................... 13

      A.  Applicable Law ........................................................................................................ 13

      B.  The Defendant Has Not Shown a Fair and Just Reason Supporting Withdrawal of His Guilty Plea ...................................................................................................................... 16

         a.  The Lengthy Delay Between The Defendant's Plea and Filing of the Motion Undermines The Defendant's Motion................................................................................ 16

         b.  The Defendant's Assertion of Innocence Is Baseless and Should Be Rejected ...... 18

         c.  Permitting The Defendant To Withdraw His Plea Would Prejudice The Government ................................................................................................................... 19

      C.  The Defendant's Claims of Ineffective Assistance of Counsel Are Meritless............... 20

   II.  The Defendant's Motion Should Be Denied Without An Evidentiary Hearing ............... 23

CONCLUSION..................................................................................................................... 25

## PRELIMINARY STATEMENT

The Government respectfully submits this opposition to the motion by Leonard Wolf ("Wolf" or "defendant") to withdraw his guilty plea entered on July 23, 2014 ("the Motion"). In the Motion, the defendant has failed to advance any fair or just reason to withdraw his guilty plea, which was taken by the Court entirely in accordance with Rule 11 of the Federal Rules of Criminal Procedure.   Instead, the defendant – a proven liar – offers nothing more than a self-serving affidavit containing unsubstantiated claims that he received ineffective assistance of counsel in connection with his plea.  Because those allegations are implausible and flatly contradicted both by the defendant's other sworn statements in the record and by affidavits submitted by the defendant's prior attorneys, the Motion should be denied without a hearing.

## BACKGROUND

### A.    Procedural History

On or about October 22, 2012, the defendant was arrested in the Middle District of Florida and charged in a one-count complaint charging him with wire fraud, in violation of Title 18, United States Code, Section 1343.  Specifically, the defendant was charged with defrauding another individual – later identified as Edward Botwinick – into paying him $10 million by falsely claiming that the money would be used for an investment.

In connection with the defendant's initial presentment in Florida, the defendant was represented by Joel Bresler, a personal assistant to the defendant who, as the Court may recall, ultimately testified for the Government at trial.  Shortly thereafter, the attorneys Michael B. Buckley, Esq. and Michael B. Cohen, Esq. appeared on behalf of the defendant and negotiated conditions for the defendant's release in Florida.  However, Mr. Cohen's representation of the defendant quickly ended because the defendant never paid Mr. Cohen the agreed-upon retainer.

(Affidavit of Michael B. Buckley, Esq. ("Buckley Aff.") ¶ 5 (attached as **Exhibit A**)); Affidavit of Michael B. Cohen, Esq. ("Cohen Aff.) ¶ 3 (attached as **Exhibit B**).)

On or about November 19, 2012, the defendant appeared for the first time in the Southern District of New York, where he was represented by Mr. Buckley and released on bail. On or about December 19, 2012, the Grand Jury returned a one-count wire fraud indictment (the "Indictment") against the defendant. The case was initially assigned to the docket of the Honorable John F. Keenan.

In or about April 2013, William N. Schumacher ("Schumacher") was arrested and charged with bank fraud, in violation of Title 18, United States Code, Section 1344, for submitting false applications for loans and lines of credit from various banks and credit unions from 2006 through 2008. Schumacher, who also served as a personal assistant to the defendant, subsequently pleaded guilty pursuant to a cooperation agreement with the Government. From Schumacher, the Government learned that he had submitted the false applications at the direction of Wolf, who received all of the proceeds from the fraudulent loans. The Government also learned, among other things, that following Wolf's arrest in 2012, Wolf, together with Schumacher and Bresler, prepared a false "Promissory Note-Guaranty" and an affidavit (the "First Affidavit") in order to support Wolf's defense that the money from Botwinick was a loan and not an investment. Wolf then directed Schumacher to sign the Promissory Note and First Affidavit, which were eventually provided to Mr. Buckley.

On or about September 18, 2013, the Government extended a plea offer to the defendant. The Government's offer would have required a plea to the sole count of the Indictment, but would not have required the defendant to plead guilty to his involvement in the fraudulent loans from banks and credit unions. The proposed plea agreement contained an agreed upon

2

Guidelines range of 51 to 63 months' imprisonment.  Mr. Buckley informed the defendant of this plea offer, but the defendant ultimately rejected it.  (Buckley Aff. ¶¶ 8-9.)

Shortly after the Government extended the plea offer, Mr. Buckley informed the Government that, around the time the First Affidavit and Promissory Note were provided to him, Mr. Buckley had a private meeting with Schumacher in Mr. Buckley's office in which they prepared a second affidavit (the "Second Affidavit"; the First Affidavit and the Second Affidavit are collectively referred to as the "Schumacher Affidavits") for Schumacher's signature.  The Second Affidavit similarly asserted that the payment to Botwinick was a loan to Schumacher Properties.  Mr. Buckley further informed the Government that he intended to offer the Schumacher Affidavits at trial.  Of course, the Government contended, and Schumacher confirmed, that he signed both affidavits at Wolf's behest, knowing they were false.

Recognizing the potential conflicts presented by Mr. Buckley's representation of the defendant at trial, on September 30, 2013, the Government submitted a *Curcio* letter to Judge Keenan advising the Court of these conflicts.  In response, Judge Keenan scheduled a *Curcio* hearing for October 9, 2013.  At the hearing on October 9, 2013, a new attorney, Jonathan Marks, Esq., informed the Court that he had been retained to represent the defendant and that Mr. Buckley had withdrawn.  The Court also adjourned the trial from November 12, 2013 until March 24, 2014.

On or about February 3, 2014, the Grand Jury returned a two-count superseding indictment (the "S1 Indictment") against the defendant charging him with (i) conspiring to commit wire fraud and bank fraud by defrauding various banks through the use of fraudulent loan applications, in violation of Title 18, United States Code, Section 1349 ("Count One"); and (ii) defrauding another individual into paying him $10 million by falsely claiming that the money

would be used for an investment, in violation of Title 18, United States Code, Section 1343 ("Count Two").  On the same day, the case was transferred to the Honorable Kimba M. Wood. At the initial appearance before Judge Wood on February 11, 2014, the Court granted a defense request to adjourn the trial until June 17, 2014.

On May 15, 2014, Mr. Marks appeared before the Court and requested that he be relieved of his representation of the defendant.  The defendant failed to appear for the conference but instead submitted, through counsel, a handwritten note purportedly from a doctor saying that high blood pressure prevented him from flying.  The Court granted Mr. Marks' request to be relieved.  Later that day, the Court held a conference call with the defendant, who stated that he had been unable to get along with Mr. Marks.  Also on the call were the defendant's incoming attorneys, John R. Sutton, Esq. and Hector Villamar, Esq.  The Court directed the defendant to formally retain counsel as soon as possible and scheduled a conference for May 22, 2014.

On or about May 22, 2014, Mr. Sutton and Mr. Villamar appeared as counsel for the defendant and were admitted by the Court *pro hac vice*.  Despite having been relieved, Mr. Marks also appeared at the conference and defense counsel reported that the defendant had been getting along better with Mr. Marks, and that the reason for their conflict was that another attorney, Gus Crowell, had been preventing Mr. Marks from communicating directly with the defendant.  Mr. Sutton, Mr. Marks and Mr. Villamar reported that they were prepared to work cooperatively on behalf of the defendant.   The Court set a new conference for May 29, 2014 to resolve the defendant's latest request to adjourn the trial.

On or about May 29, 2014, the Court granted a defense request to adjourn the trial until July 21, 2014.  Then, on July 11, 2014, Mr. Sutton and Mr. Villamar sent a letter informing the Court that the defendant had decided to change his attorneys yet again.  In subsequent conference

4

calls, Mr. Wolf informed the Court that he wanted Mr. Cohen and Mr. Buckley to resume their representation of him and take the lead role at trial. Although the Court ultimately permitted Mr. Cohen and Mr. Buckley to re-enter the case, it required Mr. Sutton to remain as counsel given his knowledge of the facts of the case.

On or about July 14, 2014, the Grand Jury returned a second superseding indictment (the "S2 Indictment"). The S2 Indictment made certain technical changes to the S1 Indictment but contained the same charges.

## B. *Curcio* and *Lafler/Frye* Allocutions

In light of the potential conflicts presented by Mr. Buckley's representation of the defendant, the Court held a *Curcio* hearing on July 17, 2014. During this hearing, the defendant testified under oath that, among other things: he was satisfied with the services of Mr. Cohen (Transcript of *Curcio* Hearing on July 17, 2014 ("Curcio Tr.") (attached as **Exhibit C**), at 14); he wanted to have Mr. Buckley as additional counsel (*id.* at 14-15); he understood that Mr. Buckley could not be called as a witness for the defense at the trial if he represented the defendant, even if there was a basis to do so (*id.* at 15-16); he understood that Mr. Buckley could not cross-examine either William Schumacher or Joel Bresler, two of the Government's anticipated witnesses at trial (*id.* at 18); he understood that Mr. Buckley's interests might diverge from his interests, but he wished for Mr. Buckley to represent him anyway (*id.* at 19-22); he had not received any inducement, promise or threat that may have influenced his willingness to have Mr. Buckley represent him (*id.* at 22); and he agreed to waive any post-conviction argument, on appeal or otherwise, based on Mr. Buckley's potential conflicts (*id.* at 23).

The Court then asked the defendant to describe his waiver in his own words. In response, the defendant accurately stated that he was giving up his right to have Mr. Buckley "not give up

any information he obtained from Mr. Bresler" or address either Schumacher or Bresler when they were in the witness box.  (*Id.* at 24.).[1]  The defendant stated that he wanted Mr. Buckley's representation because Mr. Buckley had "more knowledge of this case." (*Id.* at 24).  When given an opportunity to think about these issues, the defendant stated that he was "fine with [his] answers." (I*d.* at 25).

After the allocution of the defendant on the *Curcio* issues, the Court turned to the defendant's continued release on bail during the trial.  The Government had previously moved for remand in light of information it obtained that the defendant had continued to obstruct justice by, among other things, directing that Bresler destroy relevant documents.  The Government and the defendant subsequently agreed to the defendant's continued release with the added condition of home detention and electronic monitoring, and the Court accepted this modification.  (*Id.* at 32-33.)  However, the Government made clear on that record that in the event of either a guilty plea or a conviction at trial, the Government's position would "very likely change back to requesting the remand of Mr. Wolf." (*Id.* at 32-33).

On July 21, 2014, immediately prior to jury selection on the first morning of trial, the Government placed on the record the terms of the plea offers that had been extended to the defendant.  First, the Government reported that, on or about September 18, 2013, the defendant was offered a plea agreement requiring a plea to Count One of the Indictment, which was the wire fraud of Botwinick, and calculating an offense level of 24, criminal history category of I and a Guidelines range of 51 to 63 months' imprisonment. (Trial Transcript ("Trial Tr.") at 15-

---

[1] In his *pro se* motion papers, the defendant contends that Mr. Buckley and Mr. Cohen advised him that he would not be able to use the Schumacher Affidavits at all because Mr. Buckley could not cross-examine Schumacher.  This far-fetched claim is contradicted by the defendant's statements during the *Curcio* hearing, when he never stated that he believed he was giving up the right to have the Schumacher Affidavits used by any attorney to cross-examine Schumacher or any other witness.  (*Id.* at 24.)

16; the *Lafler*/*Frye* portion of the Trial Transcript is attached hereto as **Exhibit D**.)   The

Government also reported that on the Thursday prior to trial the defendant was offered a plea

agreement requiring a plea to both counts of the S2 Indictment and calculating an offense level

of 31, criminal history category of I and a Guidelines range of 108 to 135 months' imprisonment.

(*Id.* at 15).

The Court then addressed the defendant with respect to the plea offers.  The defendant

confirmed that he had understood that these plea offers had been made to him and that he had

rejected those plea offers.  (*Id.*). The defendant also confirmed his understanding that it was the

Government's view that his exposure post-trial was significantly higher than the Guidelines

ranges reflected in these plea offers.  (*Id*. at 15-16.)  Mr. Cohen then reiterated that he had

discussed with the defendant the most recent plea offer involving a Guidelines calculation of

108-135 months and the defendant reiterated that he had rejected it. (*Id.* at 16.)

## C.    The Trial and the Government's Evidence

Over the course of less than two trial days, the Government presented overwhelming

evidence not only of the defendant's guilt on Count Two, which related to the fraud on

Botwinick, but also that the defendant was a compulsive liar who had created and lived under a

false identity.  The defendant's lies, many of which were captured in audio recordings that were

played in open court, included that the defendant had degrees from the Massachusetts Institute of

Technology, Harvard University and Yale University (Trial Tr. at 54-55, 71, 218) and was both

an attorney and a medical doctor (Trial Tr. at 167-69, 218; GX209-T).  The defendant also

claimed that he was a senior official at Roche Pharmaceuticals (Trial Tr. at 130-31, 168-69;

GX203-T at 2; GX 206-T at 3-4; GX 208-T at 4-5) and, in that capacity, planned to appoint

Botwinick to the corporate board of Genentech, a Roche Pharmaceuticals subsidiary (Trial Tr. at

130-32).  The Government proved these were also lies by calling as a witness Joe Morris, an employee in Genentech's legal department, who testified that the defendant was not an employee of—or in any way responsible for the personnel decisions of—either Roche Pharmaceuticals or Genentech. (Trial Tr. at 249-52, 258, 266).

The evidence also revealed the numerous lies that the defendant told Botwinick about the $10 million "investment."  Specifically, the defendant told Botwinick that the money had been invested with an investment group in Marseille, France (Trial Tr. at 67-71, 74, 126-27, 134, 142-43; GX201-T at 4; GX202-T at 1-2; GX 203-T at 1, GX204-T at 1-5; GX205-T at 1-2; GX207-T at 2-3), that the money was later moved to Korea and China by the Marseille investment group (Trial Tr. at 135-36; GX202-T at 1-2, GX203-T at 2), that Botwinick's initial $10 million investment was worth over $51 million as of January 19, 2011 (Trial Tr. at 144; GX203-T at 3), and that Botwinick's initial $10 million investment was worth over $91 million as of February 7, 2012 (GX206-T at 1).  Of course, the reality was that during these periods the defendant had simply spent Botwinick's money on his home and other luxury goods.

In fact, in his conversations with Botwinick, the defendant created an imaginary partner in the investment to give it enhanced credibility.  The defendant claimed that he had jointly invested the money with John Driscoll, a son of one of the founding families of the Weyerhaeuser Corporation. (Trial Tr. at 67-71, 124-26, 130, 148-49, 161-62, 169-70; GX201-T at 3, 7-8; GX202-T at 1-2; GX203-T at 1; GX204-T at 2-5; GX205-T at 2; GX206-T at 4; GX207-T at 2-3; GX208-T at 1-4)).  However, when the Government called Mr. Driscoll to the stand, he made clear that he had no idea who the defendant was and had never met him, let alone invested money with him. (Trial Tr. at 223-227).

The Government also called David Jones, an acquaintance of the defendant, who testified that the defendant had attempted to defraud him using a scheme similar to that used against Botwinick. (Trial Tr. at 271-72, 276-78). And, finally, the Government called Joel Bresler, the defendant's former personal assistant, who provided a detailed account of the defendant's attempt to fabricate a doctoral dissertation from the Massachusetts Institute of Technology. (Trial Tr. at 321-25). Bresler also testified that the defendant had physically assaulted him on multiple occasions. (Trial Tr. at 299-300).

**D.       Guilty Plea**

On the morning of the third day of trial, July 23, 2014, the defendant informed the Court that he intended to plead guilty to both counts of the S2 Indictment.   (Transcript of Guilty Plea Hearing on July 23, 2014 ("Plea Tr.") (attached as **Exhibit E**), at 342).  Before the defendant's guilty plea allocution, the Government, at the Court's request, read aloud the maximum penalties for Count One of the S2 Indictment ("30 years' imprisonment, five years of supervised release, a maximum fine of the greatest of twice the defendant's gain or twice the loss to people other than the defendant from the offense, and a $100 special assessment") and Count Two of the S2 Indictment ("20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of the greatest of $250,000 or twice the defendant's gain or twice the loss to others from the offense, and a  $100 special assessment). (*Id.* at 342-43).

Then, the Court placed the defendant under oath, determined that he was competent to proceed, and conducted the inquiry required by Rule 11. (*Id.* at 346-365). The defendant confirmed, among other things, that he understood he was testifying under oath during the allocution. (*Id.* at 347).  After the defendant confirmed that he had a clear mind (*id.* at 347) and was not under the influence of any alcohol, medication or drugs (*id.* at 348), and after defense

9

counsel confirmed that the defendant was competent to plead (*id.* at 348-49), the Court found that the defendant was fully competent to enter an informed plea (*id.* at 349).  The defendant then confirmed that he had had an adequate opportunity to discuss the case with his attorneys and was satisfied with his attorneys' representation.  (*Id.* at 349).

The Court then properly advised the defendant of the rights that he would be giving up by pleading guilty.  (*Id.* at 349-51).  The defendant confirmed that he understood, among other things, that he would be waiving his right to continue in the ongoing trial where the Government would have to prove his guilt to the jury beyond a reasonable doubt, as well as the right to testify in his defense.  (*Id.* at 351).  The Court advised the defendant that he had the right to change his mind about pleading guilty but the defendant confirmed that he did not wish to do so.  (*Id.* at 351-52).

The Court then advised the defendant of the maximum penalties applicable to the crimes to which he was pleading guilty.  (*Id.* at 352-56).   The defendant confirmed that he understood the penalties associated with both counts, including a maximum sentence of 30 years' imprisonment on Count One (*id.* at 352-53), a maximum sentence of 20 years' imprisonment on Count Two (*id.* at 355-56), and that "if [the Court] decided to run the sentences consecutively, [his] custodial sentence could be a maximum of 50 years" (*id.* at 356).   The defendant then confirmed that he had discussed with his attorneys how the Sentencing Guidelines apply to his case (*id.* at 357) and that he understood that the Court had the authority to impose any sentence higher or lower than the advisory Guidelines range (*id.* at 358).  The defendant then stated that he understood that no one, including his attorneys or anyone from the Government, could or should give him any assurance as to what his sentence would be (*id.* at 358) and that no one had told him what his sentence would be (*id.* at 359).

10

The Court then asked the defendant to state what he did in connection with the crimes to which he was pleading guilty.  (*Id*. at 360).  After initially asserting that he had simply borrowed the money from Botwinick, the defendant ultimately admitted that he had obtained the money from Botwinick by making false statements to him. (*Id*. at 361).  With respect to Count One, which related to the conspiracy to defraud financial institutions, the defendant admitted that, along with Schumacher, he had submitted false applications for loans from banks.  (*Id*. at 363-64).  Finally, the defendant confirmed that he was pleading guilty because he was actually guilty, and was doing so voluntarily and of his own free will. (*Id.* at 364-65).  Following the allocution, the Court accepted the defendant's guilty plea, finding that the defendant knew his rights, was "waiving them knowingly and voluntarily," and that the guilty plea was supported "by an independent basis in fact, containing each of the elements of the offense." (*Id.*).

The Court next turned to the issue of bail.  The Government moved for the defendant's remand.  Defense counsel requested the defendant's continued release, relying in part on a statement from the defendant's pretrial services officer in Florida, who reported that the defendant had complied with the conditions of his release.  (Id. at 368).  In response, the Government informed the Court that the defendant had violated his bail conditions by attempting to obstruct the Government's investigation in various ways, including by hiding Schumacher at a hotel in Florida and later in Tennessee to prevent the Government from finding him in case he decided to testify against the defendant (*id.* at 371-72), instructing Bresler to destroy relevant documents including the forged Massachusetts Institute of Technology doctoral dissertation (*id.* at 373), and having Schumacher sign false affidavits to substantiate the defendant's false defense to the charges (*id.* at 374).   Citing the defendant's attempt to obstruct justice, his "violent streak [that] came out at trial pungently," (*id.* at 380), the defendant's use of false names and false

11

documents and the lengthy sentence he was facing, the Court denied bail and remanded him (*id.* at 378-81).

**E.      The Instant Motion and the Defendant's Declaration**

On February 6, 2015, more than six months after entering his guilty plea, the defendant moved *pro se* to withdraw his guilty plea and informed the Court that he had discharged his attorneys, including Mr. Cohen and Mr. Buckley.  (Exhibit C to Memorandum of Avrom Robin, Esq. ("Memorandum") Exhibit C).  Eventually, the Court appointed Mr. Robin to represent the defendant.  After consulting with Mr. Robin, the defendant signed a waiver of attorney-client privilege with all of his attorneys, including Mr. Buckley, Mr. Cohen, Mr. Marks, Mr. Sutton, Mr. Villamar and Mr. Alan R. Levy, Esq., an attorney who worked with Mr. Buckley, to the extent relevant to determining his claim.  Mr. Robin then filed the Memorandum on June 19, 2015.

Attached as Exhibit A to the Memorandum is a declaration submitted by the defendant (the "Declaration"). In the Declaration, the defendant makes a number of uncorroborated assertions and accusations regarding Mr. Buckley and Mr. Cohen.  Most relevant to the Motion, the defendant claims that he was never advised of the potential Guidelines range in the event of a conviction at trial prior to pleading guilty.  (Declaration ¶ 7).  Rather, he claims that the reason he pleaded guilty was because his attorneys incorrectly advised him that he would be sentenced to 30 years' imprisonment if convicted at trial because the Judge Wood had imposed a 30-year sentence on every fraud defendant convicted at trial following the Bernard Madoff case. (*Id.* at ¶ 9).  He further claims that his attorneys informed him that any guilty plea would likely be overturned on appeal.  (*Id.* at ¶¶ 13-16).

In the Declaration, the defendant further claims that: Mr. Buckley and Mr. Cohen assured the defendant that he would continue to be released on bail prior to sentencing (*id.* at ¶¶ 14, 16, 33); he had urged Mr. Buckley to hire a private investigator many times, and Mr. Buckley had refused to do so (*id.* at ¶ 20); Mr. Buckley and Mr. Cohen had never made the defendant aware of any plea offers from the Government prior to July 21, 2014 (*id.* at ¶ 22); that he informed Mr. Cohen on or about the day after the guilty plea that he wanted to withdraw his guilty plea (*id.* at ¶¶ 34-35); and that he asked Mr. Cohen and Mr. Buckley to hire a psychologist specifically for the purpose of withdrawing his guilty plea.  (*Id.* at ¶ 36).

## ARGUMENT

**I.**   **The Defendant Has Not Met His Burden of Showing Any Valid Basis For Withdrawal of His Guilty Plea**

### A.  Applicable Law

A plea of guilty is constitutionally valid where it is "voluntary" and "intelligent." *Bousley* v. *United States*, 523 U.S. 614, 618 (1998); *see also* Fed. R. Crim. P. 11(b)(2) (requiring court to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)").  "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."  *United States* v. *Vonn*, 535 U.S. 55, 62 (2002).  A guilty plea is "intelligent" when the defendant is advised by competent counsel, is in control of his mental faculties, and is made aware of the nature of the charges against him.  *Bousley*, 523 U.S. at 619. A plea of guilty is considered "voluntary" if the defendant enters the plea with full awareness of its "direct consequences."  *Id*. at 619 (quoting *Brady* v. *United States*, 397 U.S. 742, 755 (1970) (internal quotation marks omitted)).

"[S]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States* v. *Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (internal quotation marks omitted); *see also United States* v. *Hyde*, 520 U.S. 670, 676-77 (1997) (observing that permitting "defendant[s] to withdraw [their] guilty plea[s] simply on a lark . . . would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess"). Thus, a defendant may not withdraw a guilty plea unless the defendant shows "a fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). The defendant "bears the burden of demonstrating valid grounds for withdrawal," *United States* v. *Adams*, 448 F.3d 492, 498 (2d Cir. 2006), and the standard for meeting the burden is "stringent." *United States* v. *Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004).

In determining whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court "should consider, *inter alia*: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States* v. *Doe*, 537 F.3d 204, 210 (2d Cir. 2008). The absence of prejudice to the government is immaterial where the defendant has failed to demonstrate sufficient grounds for a plea to be withdrawn. *See, e.g., United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir.1997). A claim of innocence cannot be "wholly conclusory," but must be supported by evidence tending to demonstrate such innocence; mere assertions of deficiencies in the Government's proof are insufficient to warrant withdrawal of the plea. *United States* v. *Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001).

14

Courts should also consider "the circumstances surrounding the plea, including the nature and background of the defendant, and whether the plea was knowing and voluntary." *United States* v. *Davis*, No. 11 Cr. 295 (AKH), 2014 WL 494524, at *6 (S.D.N.Y. Feb. 6, 2014). Where, as here, a defendant premises his withdrawal motion on allegations that he entered his plea involuntarily, his burden is heavy, as he "must raise a significant question about the voluntariness of the original plea." *Doe*, 537 F.3d at 211. That standard is not met when a defendant offers only "bald statements that simply contradict what he said at his plea allocution." *United States* v. *Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011); *see also Blackledge* v. *Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Adames* v. *United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.") (citations and internal quotation marks omitted). Similarly, "[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Schmidt*, 373 F.3d at 102.

Separately, where a defendant contends that his guilty plea was not voluntary because of his lawyer's ineffectiveness, courts apply the two-prong standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 688 (1984). *See Hill* v. *Lockhart*, 474 U.S. 52, 57-58 (1985). The first prong of the *Strickland* standard considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Under the

15

second prong, the defendant must affirmatively prove prejudice by showing that counsel's errors were so serious that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694.  In the context of a guilty plea, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In determining whether a defendant would have proceeded to trial (or, in this case, to a jury verdict after trial commenced) but for his attorney's errors, the court does not apply a "mechanistic" test, but instead looks into the record as a whole. *United States* v. *Arteca*, 411 F.3d 315, 321 (2d Cir. 2005).  Factors that weigh against a defendant's argument that he would not have pled guilty but for incorrect factual information include, *inter alia*: a defendant's knowledge—at the time of the plea—that a plea agreement's estimate of a defendant's Guidelines range may be incorrect, a defendant's knowledge—at the time of the plea—that a court may impose any sentence up to the statutory maximum, and the strength of the Government's case. *Id.* at 321; *Guerrero v. United States*, No. 05 CR. 636 LTS, 2012 WL 423348, at *6 (S.D.N.Y. Feb. 8, 2012).

### B.  The Defendant Has Not Shown a Fair and Just Reason Supporting Withdrawal of His Guilty Plea

#### a.  The Lengthy Delay Between The Defendant's Plea and Filing of the Motion Undermines The Defendant's Motion

As mentioned, one of the factors that courts consider in determining whether there is a "fair and just reason" to justify withdrawal is "the amount of time that has elapsed between the plea and the motion." *Doe*, 537 F.3d at 210.  Here, the defendant did not file the Motion until more than six months had passed since the date of his guilty plea, and the Second Circuit has

16

repeatedly found that delays of five to seven months support upholding the original plea.  *See Doe*, 537 F.3d, at 213 (finding that the defendant's five-month delay in filing his motion "strongly supports the district court's finding that his plea was entered voluntarily"); *Torres*, 129 F.3d at 715 (seven-month delay counseled against entertaining defendant's motion); *United States* v. *Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) ("Gonzalez's assertion of his innocence is undercut by its timing, coming nearly seven months after the plea.").

The defendant contends that the lengthy delay before he filed his motion should be excused because he "was basically unrepresented during that time period, and had no advice of counsel regarding the importance of bringing his motion…in a timely manner."  (Memorandum at 4).  This argument is entirely unpersuasive.  The defendant continued to be represented by Mr. Cohen and Mr. Buckley throughout the time after his guilty plea and before the defendant terminated them in 2015.  Both attorneys continued to work on developing arguments to mitigate his sentence and met with the defendant as late as November 2014 regarding the Presentence Investigation Report and mitigation strategies.  *See* Buckley Aff. ¶¶ 22-26; Cohen Aff. ¶¶ 15-16, 18.  Their ongoing representation of the defendant is further evidenced by the letters that they wrote to the Court during this period regarding the defendant's sentencing date.  Moreover, when these attorneys found out in November 2014 that the defendant was interested in withdrawing his plea, they offered to assist him, but the defendant never authorized them to proceed. *See* Buckley Aff. ¶ 26; Cohen Aff. ¶ 17.  If the defendant had decided by then to dismiss these lawyers, it was his responsibility to bring that to the attention of the Court and obtain new representation (which, given the history of this case, he clearly knew how to do).  *See United States* v. *Baum*, 380 F. Supp. 2d 187, 205-06 (S.D.N.Y. 2005) (defendant who waited to file a motion to withdraw her plea was responsible for the time even though she was experiencing problems with her lawyer

because she "inexplicably failed to discharge [her attorney], obtain a new lawyer, and seek
whatever relief she thought appropriate").  Therefore, the defendant's deliberate decision to
exclude his attorneys and proceed on his own does not excuse his unreasonably long delay.

### b. The Defendant's Assertion of Innocence Is Baseless And Should Be Rejected

Another factor that courts consider is whether "the defendant has asserted a claim of legal
innocence." *Doe*, 537 F.3d at 210.   Although the defendant now asserts that he was innocent of
the charges, his bald assertions, which are flatly contradicted by the evidence at trial and the
defendant's admissions during the guilty plea proceeding, carry no weight.  As discussed, in the
less than two days of trial testimony, the Government presented overwhelming proof of the
defendant's guilt on Count Two of the Indictment, which related to Botwinick (and would have
provided proof of the defendant's guilt on Count One if the trial had continued).  Moreover, the
defendant admitted his guilt to both counts during his guilty plea allocution.  (Plea Tr. at 361-
65).  The defendant has not identified any reason why the Court should disregard the evidence it
heard at trial and the sworn statements that the defendant made on the record.  *See Hirsch*, 239
F.3d at 225 (a claim of innocence cannot be "wholly conclusory" but must be supported by
evidence tending to demonstrate such innocence).

Throughout the plea proceedings, the defendant was given every chance by the Court to
raise any concerns, questions, or anxieties about the plea but declined to do so.  The defendant's
failure to articulate such concerns further undermines his claims.  *See, e.g., Doe*, 129 F.3d at 715
(2d Cir. 1997) (holding that a defendant who "was given every chance by the district court to
raise any concerns, questions, or anxieties about the plea" but failed to do so was not entitled to
withdraw his plea because, *inter alia*, "statements at a plea allocution carry a strong presumption
of veracity"); *United States* v. *Lasky*, No. 98-1644, 1999 WL 1295848, at *2 (2d Cir. Dec. 12,

1999) (same).  Accordingly, there is no reason to question the veracity of the defendant's representations during his plea allocution regarding his awareness of the charges against him and the consequences of pleading guilty.  *See, e.g., Blackledge*, 431 U.S. at 74 (noting that a defendant's statements at a plea allocution "carry a strong presumption of verity").  The circumstances of the guilty plea allocution thus support the conclusion that the defendant entered a knowing and voluntary guilty plea, and the "bald statements" in the defendant's submission as to both his innocence and the conduct of his former attorneys, all of which are unsubstantiated, do not constitute sufficient grounds to withdraw his guilty plea.  *Hirsch*, 239 F.3d at 225.

### c.  Permitting The Defendant To Withdraw His Plea Would Prejudice The Government

Finally, permitting the defendant to withdraw his guilty plea would prejudice the Government.   Although the Government need not show prejudice to defeat a motion to withdraw a guilty plea, where, as here, the defendant has presented no valid basis for withdrawal, the Government would suffer substantial prejudice. *Torres*, 129 F.3d at 715.  During the first two days of the defendant's trial, the Government called several witnesses, many of whom had to travel great distances to arrive at the Court, and a complete presentation of the Government's evidence would have required the Government to call additional witnesses.  In the event that the defendant were granted a new trial, all of those witnesses would once again need to be tracked down, prepared to testify at a new trial, and asked to travel significant distances to attend the trial.  *See  United States* v. *Obiorah*, 536 Fed. Appx. 53, 55 (2d Cir. 2013) ("[B]ecause the government 'surely would have encountered difficulties were it required to re-assemble its evidence after' a more than eight-month delay, the government would have been prejudiced by the withdrawal of [the defendant's] guilty plea, further weighing against withdrawal.") (quoting *United States* v. *Carreto*, 583 F.3d 152, 157 (2d Cir. 2009)).  The Government would also be

prejudiced by the fact that those witnesses would have to testify more than a year later, principally about events that took place in 2008, which would likely challenge the strength of their recollections. *See United States* v. *Vega*, No. 7-CR-707 (ARR), 2012 WL 1925876, at *11 (E.D.N.Y. May 24, 2012) ("The government argues persuasively that witnesses' memories may fade due to the passage of so long a period of time.")

Therefore, the factors relevant to the consideration of the defendant's motion do not support allowing the defendant to withdraw his guilty plea.

### C.  The Defendant's Claims of Ineffective Assistance of Counsel Are Meritless

Lacking any valid basis in the record to support the Motion, the defendant has instead sought to manufacture a rationale for withdrawing his plea by claiming that his lawyers gave him incorrect advice to induce him to plead guilty.  In addition to the fact that the defendant offers nothing to corroborate his claims, the defendant's allegations should be summarily rejected for several additional reasons.

First, the defendant simply has no credibility.  At trial, the Government presented overwhelming evidence not only that the defendant defrauded Botwinick but also that the defendant had repeatedly lied about his background, qualifications, employment and other aspects of his identity.  The defendant also lacks credibility given his systematic attempts to obstruct the Government's investigation by creating false documents, destroying evidence and tampering with witnesses. (Plea Tr. at 371-376). Finally, the defendant's self-serving and implausible assertions should not be believed given the extent to which the defendant has manipulated the proceedings in this case by repeatedly hiring and firing lawyers to serve his ultimate objective of delaying and avoiding final judgment in this case.

Second, many of the Defendant's assertions are flatly contradicted by statements that the defendant himself made on the record at trial.  For example, whereas the defendant now claims that his lawyers never explained the Guidelines to him until long after his plea (Declaration ¶7), the defendant admitted in his plea allocution that his attorneys had explained how the Guidelines would apply to his case (Plea Tr. at 357-58); whereas the defendant now claims that his lawyers never advised him of any plea offer prior to the start of trial on July 21, 2014 (Declaration ¶ 22), on that date he confirmed in open court that he had been informed of both plea offers that the Government extended and that he had rejected them (*Lafler*/*Frye* Tr. at 14-16); whereas the defendant now claims that he was nervous, confused and exhausted when pleading guilty (Declaration ¶¶ 26-27), at the time of his plea he confirmed that he had a clear mind (Plea Tr. at 347); and whereas the defendant now claims that he pleaded guilty involuntarily because his lawyers threatened that he would get a 30-year sentence if convicted at trial (Declaration ¶ 24), when pleading guilty he made clear that he was pleading guilty voluntarily and of his own free will because he was actually guilty (Plea Tr. at 364-65).  In sum, these clear contradictions between what the defendant is saying in his Declaration in order to justify the withdrawal of his plea and what he said previously on the record make his Declaration completely unreliable, and in these circumstances the Court should rely on the defendant's statements at the plea allocution. *See Adames*, 171 F.3d at 732 ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.") (citations and internal quotation marks omitted).  The Court is on particularly solid ground relying on the defendant's admissions at his plea allocution in this case, given the overwhelming evidence of guilt that was presented at trial.

Finally, the defendant's assertions should be rejected because they are contradicted in all material respects by sworn affidavits by three of his attorneys – Mr. Buckley, Mr. Cohen and Mr. Sutton (Affidavit of John R. Sutton, Esq. ("Sutton Aff.") (attached as **Exhibit F**)).  According to each of these affidavits, the defendant's attorneys discussed the Sentencing Guidelines with the defendant many times prior to his guilty plea (Cohen Aff. ¶¶ 6-7, 10; Buckley Aff. ¶¶ 16, 19; Sutton Aff. ¶ 5); the Bernard Madoff case was never discussed with the defendant by either Mr. Buckley or Mr. Cohen (Cohen Aff. ¶ 11; Buckley Aff. ¶ 19; Sutton Aff. ¶ 8); neither Mr. Buckley nor Mr. Cohen indicated to the defendant that he would certainly receive a thirty-year custodial sentence if convicted at trial (*id.*); the defendant was never told a guilty plea would be overturned on appeal (Cohen Aff. ¶ 12; Buckley Aff. ¶ 20; Sutton Aff. ¶ 9); and the defendant was never told that the Court would certainly release him on bail until sentencing following the guilty plea (Cohen Aff. ¶ 13; Buckley Aff. ¶ 20; Sutton Aff. ¶ 7).  Notably, the affidavits of Mr. Cohen and Mr. Buckley are corroborated on each of these important points by the affidavit of Mr. Sutton, who was not even accused by the defendant of providing ineffective assistance himself.  In addition, the affidavits of Mr. Buckley and Mr. Cohen make clear that the defendant did not express to them any interest in withdrawing his guilty plea until several months after the plea (Cohen Aff. ¶¶ 15, 17; Buckley Aff. ¶¶ 22, 26), and that the purpose of hiring a psychologist following the plea was to prepare a report to assist with sentencing mitigation (Cohen Aff. ¶ 16; Buckley Aff. ¶¶ 23-24) – not to provide support for withdrawal of his plea.

Finally, even assuming it were true – and it clearly is not – that the defendant's lawyers predicted that he would get a 30-year sentence, such advice would not provide a basis to withdraw the defendant's plea in any event.   When a defendant seeks to withdraw a guilty plea because of ineffective assistance of counsel, factual error related to post-trial sentencing

22

exposure does not weigh as heavily in a defendant's favor as factual error related to post-plea agreement sentencing exposure. *See United States v. Diaz*, No. 07 CR. 003 (BSJ), 2009 WL 4496052, at *4 (S.D.N.Y. Dec. 3, 2009) (noting that "erroneous advice…not related to the consequences of entering the plea," but instead related to sentencing possibilities following a trial conviction, "mitigate[d] against finding prejudice").  This is particularly true given that the Court accurately advised the defendant of his actual sentencing exposure during the guilty plea allocution.  *See United States* v. *Pichardo*, No. 14–258–cr, 2014 WL 6980460, at *2 (2d Cir. Dec. 11, 2014) (rejecting defendant's effort to withdraw plea on ground that his attorney was ineffective for failing to explain one of the elements of the offense to him because, although it was "unclear exactly what [the defendant's] counsel told him," the defendant's claim was belied by his sworn statements at the plea proceeding that he "understood the charges against him, had discussed the plea with his attorney, and understood the consequences of his plea").

## II.    The Defendant's Motion Should Be Denied Without An Evidentiary Hearing

A defendant seeking to withdraw a guilty plea is not necessarily entitled to a hearing on the motion. *United States* v. *Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). The standard for granting a hearing on a motion to withdraw a guilty plea is lower than the standard for actually granting the motion. *Id.* However, an evidentiary hearing is only required when the defendant has raised "significant questions concerning the voluntariness or general validity of the plea." *Id.*; *see also Doe*, 537 F.3d at 213 ("The defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing" (internal quotation marks omitted)). A motion to withdraw a guilty plea may be denied without a hearing when the accusations lodged in support of the motion "merely contradict the record, are

inherently incredible, or are simply conclusory." *Gonzalez*, 970 F.2d at 1100; *Torres*, 129 F.3d at 715.

The defendant's motion to withdraw his guilty plea should be denied without a hearing. As demonstrated above, the accusations made by the defendant about Mr. Buckley and Mr. Cohen "contradict the record, are inherently incredible," and "are simply conclusory." *Gonzalez*, 970 F.2d at 1100; *Torres*, 129 F.3d at 715.  The defendant's Motion is premised entirely on unsupported allegations that contradict his plea allocution and other statements in the record, and motions such as these can and should be rejected without an evidentiary hearing.  *See United States* v. *Evans*, 537 F. App'x 10, 10-11 (2d Cir. 2013) *cert. denied,* 135 S. Ct. 304 (2014) (upholding district court's denial of evidentiary hearing and denial of motion to withdraw a guilty plea because statements in the defendant's "affidavit baldly conflict[ed] with the statements [the defendant] made under oath at his plea allocution"); *United States* v. *Bishop*, 541 F. App'x 65, 66 (2d Cir. 2013) (upholding district court's denial of evidentiary hearing and denial of motion to withdraw a guilty plea because the defendant's statements were "conclusory" and "the district court was not required to credit [the defendant]'s self-serving and unsupported affirmations suggesting that his plea was neither voluntary nor competent"); *Gonzalez*, 647 F.3d at 57-58 (upholding district court's denial of evidentiary hearing and denial of motion to withdraw a guilty plea where defendant's statements in support of the motion were "conclusory").

The defendant's accusations are also "inherently incredible."  *Gonzalez*, 970 F.2d at 1100; *Torres*, 129 F.3d at 715.  There is simply no logical reason why the defendant's attorneys, each of whom have decades of experience in the law, would have purposefully tried to deceive the defendant with silly and easily disproven claims about Madoff and guaranteed thirty-year

sentences to convince him to plead guilty.  Since the defendant has offered nothing but his own discredited words to support his outlandish claims, and given that those claims are contradicted in all material respects by the defendant's guilty plea, other statements in the record and sworn statements by his attorneys, the defendant has fallen far short of raising any "significant questions" about his plea.  Therefore, his Motion should be denied without an evidentiary hearing.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to withdraw his guilty plea should be denied without a hearing.


Dated:        New York, New York
              July 24, 2015

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney


                           By:  _____/s/_____
                                Niketh Velamoor
                                Jonathan Cohen
                                Assistant United States Attorneys
                                Tel.: (212) 637-1076 / 2408

25

**<u>Certificate of Service</u>**

  I, Niketh Velamoor, Assistant United States Attorney for the Southern District of New York, hereby certify that on July 24, 2015, I caused a copy of the foregoing Memorandum of Law of the United States of America in Opposition to Leonard Wolf's Motion to Withdraw His Guilty Plea to be served by ECF upon the following:

    Avrom Robin, Esq.


Dated:   New York, New York
      July 24, 2015

            _____/s/_____
            Niketh Velamoor
            Assistant United States Attorney
            Tel.: (212) 637-1076