```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

LEONARD WOLF,                                   12-CR-968 (KMW)

                  Defendant.        **OPINION & ORDER**

[PETITIONER: ANN WOLF]
------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

    Defendant Leonard Wolf was sentenced by this Court after he pled guilty to conspiracy to commit wire fraud and to substantive wire fraud. As part of his sentence, he was ordered to forfeit equity in certain real property he owned together with his wife, Ann Wolf.[1] Ann has filed a petition with the Court pursuant to 21 U.S.C. § 853(n) (the "Petition"), claiming that she holds rights in the property Leonard was ordered to forfeit.

    The Government moves to dismiss Ann's Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons below, the Government's motion is granted in part and denied in part.

## BACKGROUND

### I. Leonard's Criminal Case

    This forfeiture proceeding arises out of two frauds perpetrated by Leonard.[2] First, from approximately 2007 through 2011, Leonard conspired with his employee, William Schumacher, to submit false applications to various financial institutions to obtain loans and lines of credit.

---

[1] For simplicity and to avoid confusion, the Court refers to Mr. and Mrs. Wolf by their first names.

[2] The facts in this section are drawn from Leonard's Presentence Investigation Report. (ECF No. 152.)

1

The loan money received from the fraudulent applications was deposited into the bank account of a company called Schumacher Properties (the "Schumacher Properties Account").

Around the same time, Leonard defrauded an acquaintance, Edward Botwinick, of $10 million. Leonard told Botwinick that his money would be invested through a management group in France, falsely stating (among other things) that he had been investing in the group for more than twenty years, with a return of five times his initial investment. When Botwinick agreed to invest, Leonard directed Botwinick to wire the money to the Schumacher Properties Account.

None of Botwinick's money was invested for his own benefit. Instead, Leonard used the money to fund personal expenses, including purchases of art, cars, and jewelry, a private jet, and—relevant to Ann's Petition—to finance improvements to real property he owned jointly with Ann.

On July 14, 2012, a grand jury returned a two-count Superseding Indictment charging Leonard with conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343, 1344, and 1349, and substantive wire fraud, in violation of § 1343. (ECF No. 69.) Leonard initially elected to proceed to trial on the charges; trial began on July 21, 2014. On the third day of trial, Leonard pled guilty to both counts charged in the Superseding Indictment.

On July 26, 2016, the Court sentenced Leonard principally to 135 months on each of the two counts, to run concurrently, and ordered forfeiture in the amount of $942,679 on the conspiracy count and $10 million on the substantive wire fraud count. (ECF No. 155.)[3]

---

[3] The Court subsequently amended Leonard's sentence to adjust its restitution calculations. The forfeiture aspects of Leonard's sentence remained unchanged in the first amended judgment, which was entered on October 3, 2016. (ECF No. 176.) The Court again amended Leonard's sentence on February 8, 2017 (the "February 2017 Amended Judgment"). The February 2017 Amended Judgment made Leonard's forfeiture on the conspiracy count (in the amount of $942,679) joint and several with Mr. Schumacher. (ECF No. 191.) (Schumacher was sentenced by the Court on September 28, 2016. (See ECF No. 54, United States v. Schumacher, 13-CR-686 (KMW).) The Court was subsequently made aware that it lacked jurisdiction to enter that revision via an amended judgment and, on November 9, 2018, corrected its error by deleting the reference to joint and several liability that appeared in the February 2017 Amended Judgment. (ECF No. 235.)

On April 10, 2018, the Second Circuit affirmed Leonard's conviction.

## II. Forfeiture Orders

As part of Leonard's sentence, he was ordered to forfeit equity in two real properties he owns together with Ann: 755 Bridle Trail Road, Linville, Avery County, North Carolina 28646 (the "North Carolina Property") and 421 North Walden Place, Tucson, Arizona 85750 (the "Arizona Property").

As relevant here, the Court issued two orders related to the Arizona and North Carolina Properties (collectively, the "Properties"), the first on July 26, 2016 (the "2016 Preliminary Order") and the second on September 11, 2018 (the "2018 Preliminary Substitute Assets Order"). (*See* ECF Nos. 153, 229.) Both orders are described below.

### A. The 2016 Preliminary Order

On the day Leonard was sentenced, the Court entered the 2016 Preliminary Order, requiring Leonard to forfeit $755,357.93 of the value of the North Carolina Property (the "North Carolina Property Proceeds") and $81,929.62 of the value of the Arizona Property (the "Arizona Property Proceeds," and, together with the North Carolina Property Proceeds, the "Property Proceeds"). (Schedule A, 2016 Prelim. Or., ECF No. 153.)[4]

These figures represent the amount of crime proceeds used toward the maintenance and renovation of the Properties. The factual basis for the forfeiture of the Property Proceeds was a sworn declaration provided by Federal Bureau of Investigation Special Agent Kurgansky (the "Kurgansky Declaration"). (*See* ECF No. 135.)

Kurgansky averred that Leonard renovated and maintained the North Carolina Property with money that came from the Schumacher Properties Account, which in turn was funded by

---

[4] The 2016 Preliminary Order also ordered Leonard to forfeit various items of personal property paid for with proceeds derived from Leonard's crimes.

proceeds from Leonard's crimes. (Kurgansky Decl. ¶ 16.) Included among the expenses paid out of the crime proceed-funded bank account was $705,360.27 paid to a construction company to expand the North Carolina Property and $49,997.66 paid in property taxes on the North Carolina Property, for a total of $755,357.93. (*Id.* ¶ 17.)

The Kurgansky Declaration also averred that expenses for the Arizona Property were paid using criminal proceeds that had been transferred to the Schumacher Properties Account and to other accounts controlled by Leonard. (*Id.* ¶ 19.) Included among the expenses paid using crime proceeds were $64,102.40 in homeowner's association fees for the Arizona Property and $17,827.22 in property taxes for the Arizona Property, for a total of $81,929.62.

## B.  The 2018 Preliminary Substitute Assets Order

The Government was unable to locate assets covered by the 2016 Preliminary Order sufficient to satisfy the $942,679 and $10 million money judgments against Leonard.

Accordingly, on February 16, 2018, the Government requested that Leonard be ordered to forfeit certain substitute assets not traceable to his criminal activity. (ECF No. 210.) The Government's proposed order required Leonard to forfeit his "fifty (50) percent interest in the value of [the North Carolina Property], after deduction of the North Carolina Property Proceeds and [his] fifty (50) percent interest in the value of [the Arizona Property], after deduction of the Arizona Property Proceeds" (collectively, the "Substitute Assets"). Because the Properties were owned jointly with Ann, the Government sought only the interests it believed to be Leonard's. Once forfeited, the Substitute Assets would be applied to the outstanding money judgments against Leonard.

On September 11, 2018, the Court entered the 2018 Preliminary Substitute Assets Order over Leonard's objections. (ECF No. 229.) The Order was subsequently stayed at Leonard's request so that he could assert additional objections.

4

On November 8, 2018, the Court overruled Leonard's additional objections. (ECF No. 234.)

On November 16, 2018, Leonard filed a notice of appeal from the Order. (ECF No. 237.) That appeal remains pending.

### III.   Ann's Petition

On September 9, 2016—after the 2016 Preliminary Order issued, but before the 2018 Substitute Assets Order issued—Ann petitioned the Court for a hearing pursuant to 21 U.S.C. § 853(n). (Pet'r Ann Wolf's Pet. for H'rg ("Pet."), ECF No. 171.) In her Petition, Ann alleged the following: (1) in 1979, she and Leonard married; (2) in 1989, the couple acquired the North Carolina Property as tenants by the entirety; and (3) in 1998, the couple acquired the Arizona Property as community property with a right of survivorship. (Pet. ¶¶ 2–8.)[5] She requested a hearing pursuant to § 853(n), to amend the 2016 Preliminary Order "to fully recognize" her interest in the Properties, and "for such other and further relief as the Court deems just and proper." (*Id.* at 3.)

The Court scheduled a hearing and ordered briefing on the Petition, but adjourned the hearing and extended the briefing deadlines several times throughout 2016 and 2017 because Ann and the Government were engaged in ongoing settlement discussions. (*See* ECF Nos. 173, 188, 190, 192–97.)

The parties did not reach a resolution. On December 13, 2017, the Government moved to dismiss Ann's Petition for failure to state a claim, pursuant to Federal Rule of Civil Procedure

---

[5] Ann's Petition did not allege an interest in the personal property Leonard was ordered to forfeit. Having received no third-party petition regarding that personal property, on November 22, 2017, the Court entered the Final Order of Forfeiture as to Certain Specific Property. (ECF No. 200.) Due to Ann's pending Petition, that order did not address forfeiture related to the Properties.

5

12(b)(6). (ECF No. 201.)[6] At that time, the Government submitted briefing on Ann's claim to the Property Proceeds—the only equity in the Properties that Leonard had, at that time, been ordered to forfeit. (*See* Mem. Law Supp. Gov't's Mot. Dismiss Third-Party Pet. ("Gov't's Prop. Proceeds Mem."), ECF No. 202.)

On September 11, 2018, the 2018 Preliminary Substitute Assets Order issued. Ann did not move to supplement her Petition to reflect the 2018 Preliminary Substitute Assets Order, but nonetheless submitted briefing to the Court regarding her interests in both the Property Proceeds and the Substitute Assets on December 7, 2018. (*See* Mem. Law Opp'n Gov't's Mots. Dismiss Pet. ("Ann's Mem."), ECF No. 242.)[7]

On January 3, 2019, the Government filed additional briefing addressing Ann's claim to the Substitute Assets. (Reply Mem. Law Supp. Gov't's Mot. ("Gov't's Sub. Assets Mem."), ECF No. 245.)[8]

On January 18, 2019, Ann filed a Reply, at which time the matter became fully briefed. (Reply Mem. Law Further Opp'n to Gov't's Mots. ("Ann's Reply"), ECF No. 249.)

---

[6] Attached to Ann's Petition are copies of the deeds to the Properties. Because the Court does not rely on the deeds in reaching the conclusions in this decision, it need not and does not convert the Government's motion to dismiss to one of summary judgment.

[7] Ann should have sought leave from the Court to supplement her Petition with her claim to the Substitute Assets, because that claim did not arise until after her Petition was filed. *Cf.* Fed. R. Civ. P. 15 ("[T]he court may .. permit a party to serve a supplemental pleading setting out any transaction . . . that happened after the date of the pleading to be supplemented."). Ann's failure to do so is excused, however. First, Ann's Petition set forth the factual basis for her claim to the Substitute Assets, namely, her co-ownership of the Properties. Second, based on the parties' briefing, which addresses Ann's claims to the Property Proceeds and the Substitute Assets, the parties appear to agree that both claims are before the Court. Third, the parties do not raise any argument with respect to the deficiency of the other's pleading or motion. The Court thus construes Ann's Petition as alleging claims to both the Property Proceeds and the Substitute Assets. *See* Fed. R. Civ. P. 8(e) (requiring the Court to construe pleadings "so as to do justice").

[8] The Government styles this memorandum as a "Reply in Support of a Preliminary Order of Forfeiture as to Specific Property and a Preliminary Order of Forfeiture as to Specific Assets." However, it is more accurately framed as a brief in support of its motion to dismiss Ann's Petition. As explained above, the Court already entered preliminary orders of forfeiture as to Leonard with respect to the Property Proceeds and the Substitute Assets. The present proceeding is an ancillary proceeding that follows the entry of preliminary order of forfeiture and concludes with the entry of a *final* order of forfeiture after any third-party interests in the property forfeited by the defendant have been adjudicated. *See* Fed. R. Crim. P. 32.2(c).

Ann thus asserts two claims. First, Ann alleges an interest in the Property Proceeds that Leonard was ordered to forfeit by the 2016 Preliminary Order. Second, she alleges interests in the Substitute Assets that Leonard was ordered to forfeit by the 2018 Preliminary Substitute Assets Order. In resolving the Government's motion to dismiss Ann's Petition, the Court considers all the parties' submissions, namely: (1) Ann's Petition; (2) the Government's Property Proceeds Memorandum; (3) Ann's Memorandum; (4) the Government's Substitute Assets Memorandum; and (5) Ann's Reply.

## LEGAL STANDARDS

### I. General Forfeiture Principles

Under 18 U.S.C. § 982(a)(2), the Court must order a defendant convicted of substantive bank or wire fraud, or conspiracy to commit bank or wire fraud, to "forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." Forfeiture made pursuant to § 982, including any related judicial proceeding, is governed principally by 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1). Federal Rule of Criminal Procedure 32.2 sets forth additional procedural rules that apply to forfeiture proceedings.

"Property" is defined to encompass "real property, including things growing on, affixed to, and found in land," 21 U.S.C. § 853(b)(1), as well as "tangible and intangible personal property, including rights, privileges, interests, claims, and securities," *id.* § 853(b)(2). Where a parcel of real property is involved, § 853 permits the forfeiture of a partial interest in that parcel; the statute does not require forfeiture of the entire parcel. *See Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004).

Two categories of property are subject to forfeiture under § 853. The first, sometimes referred to as "tainted property," is described in § 853(a). *Honeycutt v. United States*, 137 S. Ct.

7

1626, 1632 (2017); *see also United States v. Peterson*, 820 F. Supp. 2d 576, 583 (S.D.N.Y. 2011) (Chin, J.) (terming property forfeited pursuant to § 853(a) "offense property"). As relevant here, § 853(a) provides that a defendant "shall forfeit to the United States, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [a] violation." 21 U.S.C. § 853(a)(1).

The second category, "substitute property," is "any other property of the defendant." *Id.* § 853(p). The Government may recoup substitute property if the tainted property "has been dissipated or otherwise disposed of by 'any act or omission of the defendant.'" *Honeycutt*, 137 S. Ct. at 1634 (quoting 21 U.S.C. § 853(p)(1)).

## II.     Ancillary Proceeding

Section 853 and Federal Rule of Criminal Procedure 32.2 create a two-stage procedural framework for completing a forfeiture. "At stage one . . . , before entering a preliminary order of forfeiture, the court . . . adjudicate[s] the government's interest vis-à-vis the defendant 'without regard to any third party's interest in the property.'" *United States v. Daugerdas*, 892 F.3d 545, 549 (2d Cir. 2018) (quoting Fed. R. Crim. P. 32.2(b)(2)(A)). "[A]t stage two, before entering a final order of forfeiture, the court resolves any third-party petitioner's interests vis-à-vis the defendant." *Id.* The proceeding before this Court is in stage two.

During stage two, "any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C § 853(n). The Petition initiates an ancillary proceeding that "closely resembles a civil action," and the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. *Pacheco*, 393 F.3d at 352 (citing Fed. R. Crim. P. 32.2(c)(1)(A)).

A motion to dismiss the third-party petition "is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6)." *Daugerdas*, 892 F.3d at 552. Accordingly, to survive a motion to dismiss, the petition need only "state[] 'enough facts to state a claim to relief that is plausible on its face.'" *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) (quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011)). The Court "take[s] all factual allegations alleged in the petition to be true, but [it] need not do the same for legal conclusions." *Daugerdas*, 892 F.3d at 552 (internal citations omitted).

## DISCUSSION

Ann argues that she qualifies for relief under 21 U.S.C. § 853(n)(6)(A).[9] To prevail under that subsection, a petitioner must establish, by a preponderance of the evidence, that she has a "legal right, title, or interest" in the property to be forfeited,

> and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest [1] was vested in the petitioner rather than the defendant or [2] was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

21 U.S.C. § 853(n)(6)(A) (brackets added). The qualifying temporal limitation "at the time of the commission of the acts which gave rise to the forfeiture of the property under this section" modifies both the "rather than" clause and the "superior" clause. *See Daugerdas*, 892 F.3d at 554 n.9.

The forfeiture statute does not define what constitutes a "legal . . . interest." Rather, "[t]he extent of the petitioner's interest in the [property to be forfeited] is determined in accordance with state law." *Watts*, 786 F.3d at 161 (citing *Willis*, 652 F.3d at 242).

The Court considers, first, whether Ann has alleged a plausible claim under § 853(n) with

---

[9] Because Ann argues only that she qualifies for relief under subsection (A) of § 853(n)(6), and does not address subsection (B), the Court limits its discussion to subsection (A). (*See* Ann's Mem. 8.)

9

respect to the Property Proceeds, and then whether she has alleged a plausible claim under § 853(n) with respect to the Substitute Assets.

## I. The Property Proceeds

Ann cannot claim any legal right, title, or interest in the Property Proceeds. This is "[b]ecause, by definition, the 'proceeds of an offense do not exist before the offense is committed,'" and because any such proceeds "belong to the government from the moment that they come into existence." *Id.* at 166–67 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)); *see also* 21 U.S.C. § 853(c) ("All right, title, and interest in [tainted] property . . . vests in the United States upon the commission of the act giving rise to forfeiture under this section."). When proceeds obtained as a result of a violation are invested in real property, equivalent equity in that real property constitutes tainted property under § 853(a). *See, e.g.*, *United States v. Totaro*, 345 F.3d 989, 996 (8th Cir. 2003) (holding that, where a real property's "mortgage, real estate taxes and upkeep" were paid with criminal proceeds, equity in that property equivalent to the criminal proceeds used was forfeitable); *United States v. Caspersen*, 275 F. Supp. 3d 502, 504 (S.D.N.Y. 2017) (Rakoff, J.) (holding that "the use of crime proceeds to pay off a [home equity line of credit] secured by real property results in the Government's acquisition of an interest in the real property to the extent of the payment"); *Peterson*, 820 F. Supp. 2d at 584 (holding that, where a defendant paid his mortgage and funded renovations using criminal proceeds, equity in the real property in the amount of the proceeds invested was "offense property").

The Court found that $755,357.93 of the value of the North Carolina Property and $81,929.62 of the value of the Arizona Property was traceable to Leonard's criminal conduct. Ownership of the expended criminal proceeds, and of the corresponding equity in the Properties, vested in the Government at the time of Leonard's criminal conduct. *See* 21 U.S.C. § 853(c).

Ann thus cannot claim that any "legal right, title, or interest" in this equity was vested in her "at the time of the commission of the acts which gave rise to [this] forfeiture." *Id.* § 853(n)(6)(A); *see also, e.g.*, *Peterson*, 820 F. Supp. 2d at 588 (holding, where real property was held by a petitioner and his criminal defendant-partner as community property, that the petitioner's interest in the property did not extend to the equity in the property generated by his defendant-partner's investment of criminal proceeds).

Ann cannot relitigate the above findings. *See Peterson*, 820 F. Supp. 2d at 582 (stating that an ancillary forfeiture proceeding "does not involve relitigation of the forfeitability of the property"). Therefore, for the reasons above, the Government's motion to dismiss Ann's Petition is granted with respect to the Property Proceeds.

## II. The Substitute Assets

### A. Ann's and Leonard's Interests in the Properties

Unlike her interest in the Property Proceeds, Ann's interest—if any—in the Substitute Assets vested prior to Leonard's criminal conduct, because she alleges that she and Leonard acquired the North Carolina Property in 1989 and acquired the Arizona Property in 1998. Whether Ann's Petition survives the Government's motion to dismiss thus turns on whether Ann has plausibly alleged that she has a legal interest in the Substitute Assets that is "superior to" Leonard's or that is vested in her "rather than" Leonard. 21 U.S.C. § 853(n)(6)(A).

According to Ann's Petition, Ann and Leonard hold the North Carolina Property as tenants by the entirety under North Carolina law; and hold the Arizona Property as community property with a right of survivorship under Arizona law. Ann and the Government agree that under the pertinent state laws, Ann and Leonard enjoy the following rights in each Property: (1) a right against the unilateral alienation of the Property by the other spouse; (2) a right to possession of the entire Property for the duration of his or her lifetime; and (3) a survivorship right, meaning

11

that if one spouse predeceases the other, the surviving spouse takes title to the entire Property in fee simple. (*See* Ann's Mem. 5; Gov't's Sub. Assets Mem. 3.)[10]

The parties also agree that, for the purposes of § 853, these rights are vested in each spouse individually. (*See* Gov't's Sub. Assets Mem. 5–6 (arguing that the Government seeks only Leonard's interests in the Properties, not Ann's); Ann's Reply 1 (arguing that Ann's interests "are separate and distinct from [Leonard's]").) That is, Ann and Leonard each enjoy their own set of rights in the Properties, distinct from the set of rights enjoyed by the other spouse. It follows that Leonard's interest may lawfully be forfeited to the Government because it is "property of [Leonard]" under § 853(p); and that Ann has an interest in the Properties that is vested in her "rather than" Leonard under § 853(n).

### B. Whether Ann's Petition States a Plausible Claim Under § 853(n)

The Government argues that Ann's Petition fails to state a claim under § 853(n) because the Substitute Assets represent solely Leonard's interest in the Properties, exclusive of Ann's. (*See* Gov't's Sub. Assets Mem. 6–7.) According to the Government, the 2018 Preliminary Substitute Assets Order already accounts for Ann's interest in the Properties, and therefore no further recognition of Ann's rights is required under § 853(n).

Ann disagrees. She contends that her rights in the Properties may not lawfully be liquidated and therefore even a partial forfeiture of the Properties is impermissible. (*See* Ann's Reply 7–9.)

The Court need not rule on Ann's liquidation argument in order to decide the Government's motion because, even assuming liquidation of Ann's interest in the Properties is permissible, Ann's Petition nevertheless states a plausible claim for relief under § 853(n).

---

[10] The Government has reserved its right to dispute this characterization of Ann's interest in the Properties, should its motion be denied. (*See* Gov't's Sub. Assets Mem. 3.)

12

The Government's argument for dismissal depends on the assumption that Ann's and Leonard's rights in the Properties are of equal value. If Ann's rights in the Properties are worth more than fifty percent of the Properties' value, then some interest in the Substitute Assets is vested in her "rather than" Leonard.[11] Yet the Government does not provide, and the Court is not aware of, any controlling authority for the proposition that in a criminal forfeiture proceeding, a spouse's interest in a tenancy by the entirety or in community property with a right of survivorship is, as a matter of law, fifty percent of the property's value.

Although the set of rights held by Ann correspond to the rights held by Leonard, it does not follow automatically that the value of Ann's rights is equivalent to the value of Leonard's rights. Indeed, the question of how to value individual interests in marital property that include rights of lifetime possession and survivorship—as Ann's and Leonard's interests do—is an unsettled one in federal courts. Particularly relevant here, several courts have rejected, or at least questioned, the assumption that a fifty-fifty allocation of the property's overall worth accurately captures the value of each spouse's interest. *Compare, e.g., United States v. Rodgers*, 461 U.S. 677, 698–99 (1983) (illustrating, in the tax context, how to value an interest in real property that included a life estate and a half-interest in the remainder estate); *In re Murray*, 900 F.3d 53, 61–62 (2d Cir. 2018) (explaining, in the bankruptcy context, that the value of a debtor's interest in

---

[11] The Court is aware of two decisions holding that an innocent spouse's interest in real property held as a tenancy by the entirety cannot satisfy Section 853(n)(6)(A) because the innocent spouse's interest is equal, not "superior," to that of the defendant spouse. *See Caspersen*, 275 F. Supp. 3d at 505; *United States v. Jimerson*, 5 F.3d 1453, 1455 (11th Cir. 1993). However, neither decision appears to have considered whether the innocent spouse-petitioner had an interest in the property that was vested in her "rather than" the defendant. In *Daugerdas*, the Second Circuit acknowledged that § 853(n)(6)(A) establishes two types of interests that must be recognized, using brackets to distinguish between the "rather than" and "superior to" clauses, and stating that "Section 853(n)(6)(A) describes the emergence of *both kinds of property interests with which it is concerned* . . . a right that 'was vested' *or* an interest that 'was superior.'" 892 F.3d at 554 n.9 (emphases added). Consistent with *Daugerdas*, Ann may establish her claim by asserting that there is a legal interest in the Substitute Assets is vested in her, rather than, Leonard; she need not prove that her interest is "superior to" Leonard's. *See United States v. Espada*, 128 F. Supp. 3d 555, 56–62 (E.D.N.Y. 2015) (Block, J.) ("[A] third party's legal interest in forfeited property need not be superior to the defendant's. Rather, it is sufficient that the petitioner has a separate and distinct legal right to the property that is vested in her and her alone.").

marital property held as a tenancy by the entirety may be less than fifty percent when the non-debtor's present possessory interest and survivorship rights are properly valued (citing *In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989)); *United States v. Cardaci*, 856 F.3d 267, 279 (3d Cir. 2017) (holding, in the tax context, that actuarial tables must be used in order to "account[] for differences in anticipated life expectancies and ensure[] that the concurrent interests of both spouses are correctly calculated"); *United States v. Baran*, 996 F.2d 25, 28 (2d Cir. 1993) (affirming, in the tax context, a district court's decision to use actuarial tables to value a debtor's life estate in real property); *In re Pletz*, 221 F.3d 1114, 1118 (9th Cir. 2000) (affirming, in the tax context, a district court's use of actuarial tables to value a debtor's life estate and survivorship right in property held as a tenancy by the entirety); *with United States v. Barr*, 617 F.3d 370, 373 (6th Cir. 2010) (holding, in the tax context, that a non-delinquent spouse was entitled to fifty percent of the proceeds from the foreclosure sale of a home owned with her tax-delinquent husband as a tenancy by the entirety). Therefore, it is plausible that Ann's rights in the Properties entitle her to retain a greater share of the Properties' value than is currently provided for by the 2018 Preliminary Substitute Assets Order. Although the Court may ultimately determine that Ann's rights entitle her to retain only fifty percent of the Properties' value, after deduction of the Property Proceeds, the Government has not demonstrated the inevitability of that determination at this stage.

The Government's two remaining arguments in support of dismissal fail to alter the Court's conclusion that further proceedings are required. Each is addressed below.

    1. Preemption

The Government first argues that state law is preempted by the federal forfeiture statute. (*See* Gov't's Sub. Assets Mem. 3.) This assertion confuses the issue. Although state law will not protect the rights Ann has in the property from forfeiture that is properly authorized under federal

14

law, Ann does not claim that the Properties are immune from forfeiture because of a protection provided by any *state* law. Rather, she claims that there is no basis under *federal* law to require her to forfeit her rights to non-alienation, lifetime possession, and survivorship—because those rights are not "property of [Leonard]" under § 853(p) and because she meets the requirements of § 853(n) with respect to those rights. That the Government fails to apprehend Ann's claim is clear from the decisions it relies on for its preemption argument, which all address claims by *defendants*—not third parties—that the forfeiture of their property was prohibited by state law. *See United States v. Fleet*, 498 F.3d 1225, 1233 (11th Cir. 2007) (rejecting argument by *defendant* that he could not be ordered to forfeit his interest in real property he held with his innocent wife as a tenancy by the entirety); *United States v. Stevenson*, 834 F.3d 80, 87 (2d Cir. 2016) (rejecting argument by *defendant* that he could not be ordered to forfeit his pension plan contributions because the New York State Constitution states that pension benefits "shall not be diminished or impaired"); *United States v. Bollin*, 264 F.3d 391, 399 (4th Cir. 2001) (rejecting argument by *defendant* that he could not be ordered to forfeit funds in his individual retirement account that were insulated from garnishment by Georgia state law); *United States v. Curtis*, 965 F.2d 610, 616–17 (8th Cir. 1992) (rejecting argument by *defendant* that her home could not be ordered to be forfeited because, under Iowa state law, it was exempt from forfeiture, and noting "that there were no other persons in this case, i.e., a husband or children, claiming to have any homestead or equitable interest in the subject property"); *see also United States v. Wagoner Cty. Real Estate*, 278 F.3d 1091, 1095 (10th Cir. 2002) (rejecting argument by *non-innocent landowner* that a state-law homestead protection exempted her property from forfeiture). These authorities are not determinative of the issue now before the Court, which is whether and to what extent the forfeiture of Ann's rights in the Properties is permissible under *federal* law.

15

2. <u>Innocent Owner Defense</u>

The Government next argues that Ann's Petition must be dismissed because, in contrast to the federal civil forfeiture statutes, "the criminal forfeiture statutes do not provide for an innocent owner exception to forfeiture." (Gov't's Sub. Assets Mem. 4.) The absence of an innocent owner exception to criminal forfeiture under 21 U.S.C. § 853 does not imply that a court need not account for the interests of an innocent owner. First, as a general matter, the Second Circuit has "recognized Congress' intention to vest in the government the same substantive rights under the [civil and criminal forfeiture] statutes, notwithstanding their technical differences." *Pacheco*, 393 F.3d at 355. Second, including an innocent owner exception in the criminal forfeiture statute would be "would be superfluous," because criminal forfeiture under § 853 "reaches only the property of the criminal defendant," and therefore "there are no circumstances in which the property of an innocent owner is lawfully forfeited."[12] *Totaro*, 345 F.3d at 995; *see also Daugerdas*, 892 F.3d at 548 ("Unlike civil forfeiture, which is an *in rem* action, 'criminal forfeiture is an *in personam* action in which *only the defendant's interest* in the property may be forfeited.'" (quoting Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000) (emphasis added))); *von Hofe v. United States*, 492 F.3d 175, 190 (2d Cir. 2007) ("[A]n in personam forfeiture hinges on criminal conviction."); *United States v. Lester*, 85 F.3d 1409, 1414 n.8 (9th Cir. 1996) ("[B]ecause a criminal forfeiture is an action against the convicted defendant, who by definition is not 'innocent,' there simply was no need to have an innocent-owner exception."); *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992) ("[T]he categories of *vested* and *superior* [in § 853(n)(6)] are intended to cover those cases where the Court lacks

---

[12] In *Totaro*, the Eighth Circuit was interpreting 18 U.S.C. § 1963(l), which governs forfeiture pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act. The wording of § 1963(l) is identical to 21 U.S.C. § 853(n) and "case law implementing § 853(n) is persuasive in [the] task of applying § 1963(l)." *Totaro*, 345 F.3d at 995.

16

jurisdiction over the property because it is not really 'property of the defendant.'" (citing S. Rep. No. 225, 98th Cong., 2nd Sess., reprinted in 1984 U.S. Code Cong., & Admin. News 3182, 3391)).

### C.     Conclusion

Because Ann's Petition raises a plausible claim to relief under § 853(n)(6)(A) that must be resolved by further proceedings, the Government's motion to dismiss Ann's Petition is DENIED with respect to the Substitute Assets. The denial is without prejudice to the Government arguing, in a future dispositive motion, that an award of fifty percent of the Properties' value, after deduction of the Property Proceeds, would appropriately compensate Ann for any loss of rights caused by the forfeiture of Leonard's interest in the Properties.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss Ann's Petition is GRANTED as to the Property Proceeds but DENIED as to the Substitute Assets.

Because the Government reserved its right to challenge Ann's characterization of her rights in the Properties, the Court has not made any findings with respect to whether the allegations in Ann's Petition are true. Accordingly, at present, the question of how, if at all, to amend the 2018 Preliminary Substitute Assets Order to account for Ann's rights in the Properties is not before the Court. The Court thus reserves decision regarding amendment of that Order until the Government has been heard on whether it disputes any of the allegations in Ann's Petition.

By March 29, 2019, Ann and the Government are ordered to submit a joint letter to the Court, not to exceed five (5) pages, advising the Court on whether any material fact remains in dispute regarding Ann's Petition as to the Substitute Assets. If there is no material fact in dispute, the letter should advise the Court whether and when this matter should proceed to summary judgment.

The Clerk of Court is directed to terminate the motion at ECF No. 201.

SO ORDERED.

Dated: New York, New York
March 21, 2019

*Kimba M. Wood*
KIMBA M. WOOD
United States District Judge